509, 510.   MITCHELL *v.* HENRY VOGT MACHINE CO.,

and *vice versa.*

1. A sued B on notes given for the purchase-price of an ice plant which A had sold to B. B's defense was that the notes were made as a part of a written contract, by the terms of which A had agreed to obtain for him certain leases of the land on which the ice plant was situated, and that A had failed to comply with his contract, in that he had not obtained for B the said leases. B set up damages resulting from the breach, by way of recoupment. *Held:* (*a*) B could recoup any damages which were the natural and proximate consequence of the breach. (*b*) B could not recover as damages the value of the leases at the time of the breach and also all expenses incurred by him on account of his failure to obtain the

leases. (c) The court did not err in compelling B to elect as to which class of damages he would seek to recover.

2. A finding of the court without the intervention of a jury, including in one sum both principal and interest, is not ground for a new trial. Such a judgment, when otherwise authorized, will be upheld with directions to amend it by separating principal and interest.

3. There was no material error of law, and the finding of the court is supported by the evidence.

Complaint, from city court of Americus—Judge Crisp. April 13, 1907.

Argued October 21, 1907.—Decided February 11, 1908.

*E. A. Hawkins, W. A. Dodson,* for Mitchell.

*Lane, Maynard & Hooper, Ellis, Webb & Ellis,* contra.

HILL, C. J. The Henry Vogt Machine Company brought suit in the city court of Americus against Thomas E. Mitchell, on five promissory notes for the principal sum of $8,000, besides interest. The defendant filed his answer setting up that the notes sued upon were made by him as a part of a contract in writing entered into between him and the plaintiff, and that there was a breach of this prior contract on the part of the plaintiff, in that the plaintiff had agreed in said contract to obtain from the Central of Georgia Railway Company certain leases referred to in the contract; and he sought to set up and recoup his damages resulting from the alleged breach, which he claimed to be the value of the leases, and also the expenses which he had incurred in performing his part of the contract. The plaintiff demurred to this answer, on the grounds, that the notes sued upon were unconditional contracts in writing, complete in themselves and making no reference to this prior contract, and that the prior contract was between different parties from the parties to the notes sued on, and was an effort to vary the terms of said notes; and further, that the items of expenses set out in the answer showed on their face that they were not incurred by the defendant in complying with the contract, but were expenses incurred by him in the conduct of his business. The court overruled the demurrer, and, by agreement, heard the case without the intervention of a jury. After hearing all the evidence, and before the argument, the court required the defendant to elect whether he would seek to recoup, as damages for the breach of the contract, the value of the leases, or damages in the nature of expenses sustained by him arising out of

his failure to obtain the leases; and the defendant elected to re-
cover the expenses which he had incurred. The court rendered a
judgment in favor of the plaintiff and against the defendant for
$8,024.51, principal, with interest at six per cent. per annum from
the date of judgment. The court further found, that the prior
writing or contract set up in the defendant's answer was compe-
tent evidence, and that the evidence showed a breach of the con-
tract on the part of the plaintiff, from which breach the defend-
ant had sustained as damages certain items which are set out in
the judgment of the court; and found against certain other ex-
penses which the defendant sought to set up, on the ground that
they did not arise out of or were not the results of the breach by
the plaintiff of the contract in question. In other words, the
court found in favor of the plaintiff the amount of the notes
sued on, and in favor of the defendant on three material points
involved in the controversy: (1) the court sustained the conten-
tion of the defendant that the notes sued upon constituted a part
of the prior contract in writing between the plaintiff and himself
and one J. W. Shiver; (2) the court sustained the contention of
the defendant that there was a breach of this prior contract by
the plaintiff, in that the plaintiff had not obtained, as it had
agreed to do in said contract, certain leases mentioned in the
contract, from the Central of Georgia Railway Company; and (3)
the court allowed the defendant to prove and recoup damages
arising from said breach. The defendant filed a motion for a new
trial, on various grounds, which the court overruled. The plain-
tiff, by cross-bill, excepted directly to the final judgment rendered
on the trial, and assigns error in the judgment overruling his
demurrer to the answer, and in various rulings on evidence, and
in the items of damages allowed under the answer and the proof.

A narrative statement of the evidence is necessary to a clear un-
derstanding of the controlling questions in the case. The Henry
Vogt Machine Company had sold to one E. D. Ansley an ice-
machine plant. This ice-machine plant was located by Ansley on
certain real estate in Americus, Georgia, which was owned by the
Central of Georgia Railway Company, and which he had leased
from the railway. company for a period of twenty years, with an
option of twenty years more. Ansley failed to pay the machine
company for the ice plant, and there was litigation pending be-

tween him and the machine company for the purchase-money of the plant and certain equities therein claimed by Ansley. There were also liens of certain materialmen and builders on ice plant, amounting to $2,000. The machine company had secured a judgment against Ansley for the purchase-money of the machine, and Ansley had taken the case to the Supreme Court. This was the situation when the Henry Vogt Machine Company and Mitchell made the contract relating to the ice plant. By the terms of this contract, it was agreed, that the ice plant should be brought to sale under the fi. fa. in favor of the machine company against Ansley; that at this sale, Mitchell was to buy the ice plant on the basis of the sum of $10,000 for the entire property, without regard to what the property might bring at sale; that of this sum of $10,000, Mitchell was to pay $2,000 in cash, the cash to be appropriated to the payment of the court costs, taxes, etc., and to the payment of $1,200 to J. W. Shiver, who had a materailman's lien on it, and to pay the equity which Ansley claimed in the property. The aggregate amount required to pay these sums was $3,000, which Mitchell paid. For the balance of the $10,000, Mitchell agreed to execute five promissory notes payable to the plaintiff, which notes are the ones sued on. This contract recites the leases to the real estate made by the Central of Georgia Railway Company to Ansley, and contains this stipulation as to the leases: "The said Henry Vogt Machine Company agrees to obtain from the Central of Georgia Railway Company a lease to the grounds on which the ice plant of the Southern Ice & Cold Storage Company, or E. D. Ansley, is situated, and also a lease for the pipe-line and water privileges." The evidence supports the finding of the court that the plaintiff, the machine company, did not obtain these leases; and the plea of recoupment is based on the damages resulting from and arising out of the breach by the plaintiff of this part of the contract.

1. The court did not err in compelling the defendant to elect between the two classes of damages resulting from the breach of the contract by the plaintiff in the failure to obtain the leases from the Central of Georgia Railway Company. It would be unjust to allow him, as damages for this breach, the value of the leases, and also expenses incurred on account of the breach. Either class of damages would be proper, but to allow both would be to allow

double compensation for the same breach. If expenses incurred by the defendant are to be recovered for this breach of the contract, the value of the leases ought not also to be allowed. The two are incompatible elements of damages growing out of the same breach. *Fontaine* v. *Baxley,* 90 *Ga.* 417 (4), (17 S. E. 1015).

The defendant having elected to recover the expenses sustained by him on account of the alleged breach, he could only recover such damages as were the natural and proximate consequence of the breach, and such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract. Civil Code, § 3799; *Georgia Railroad* v. *Hayden,* 71 *Ga.* 518 (51 Am. R. 274), and many other decisions of the Supreme Court, following the rule announced in the leading English case of Hadley *v.* Baxendale, 9 Exch. 341-343. The defendant could only recover the necessary expenses incurred by him in complying with the contract. He could not recover for the expenses incident to the conduct of his business; such, for example, as the cost of additions or repairs to the ice plant, or the cost of operating it. Civil Code, § 3806; *Anderson* v. *Hilton & Dodge Co.,* 121 *Ga.* 691 (49 S. E. 725). The practical question is, what damages resulted to Mitchell from the failure to get the leases from the Central of Georgia Railway Company? He testified, that the water supply of the ice plant was located about 500 feet from the plant, and, to get to this water, a pipe line would have to be laid on the land of the Central of Georgia Company which was included in the leases made to Ansley by the railway company, which the plaintiff had agreed to obtain for him; that the company refused to allow him to lay his pipe under its land, and he was compelled to make other arrangements for his supply of water. The expenses incurred in making the arrangements were properly allowed by the court.

The evidence did not show any other expense directly traceable to the breach of the contract in failing to get the leases to the land on which the ice plant was located. The railway company did not interfere with the operation of the ice plant by the defendant, except as to the matter of laying the pipe, above mentioned. The evidence showed that while the plaintiff failed to get a twenty-year lease, as it had agreed to do, it did obtain a five-year lease from the railway company, and offered to transfer

it to the defendant. Of course, if the railway company had re-quired the defendant to remove his plant from its land, or had stopped him from operating his plant, an entirely different question would be presented. But it could not be anticipated that the railway company would so act. The only expense, therefore, incurred by the defendant was his outlay in getting another supply of water when the railway company refused to allow him to lay his pipe over its land as provided in the lease to Ansley; and this was allowed by the court. The items amounting to $3,000 which Mitchell had paid to Ansley, Shiver, and others could not be recovered, because this amount was a part of the purchase-price of the ice plant.

Several errors are assigned on the ruling excluding testimony as to the value of the leases. There was no error in excluding such evidence; for, after the defendant had elected to recover as damages his expenses, the value of the leases was not pertinent or relevant. Other items of expense, such as the difference in the ice actually manufactured and that which could have been manufactured but for the refusal of the railway company to permit the defendant to lay the pipe line as above mentioned, and the cost of erecting a pump-house for the engine and pump to supply water, were not proved.

2. It is insisted that the court rendered a judgment for a principal amount in excess of the principal amount sued for. The amount of the principal sued for was $8,000, and the judgment is for $8,024.51. An analysis of the judgment shows that the court, after deducting the amount of damages which he allowed the defendant from the principal amount sued for, calculated the interest on this balance at six per cent. to date of the judgment, and rendered his judgment for a lump sum including both principal and interest. This was an immaterial lapsus, and is easily remedied by affirming the judgment with direction that the court amend the judgment by separating principal from interest.

3. We have carefully considered all other assignments of error in the motion for new trial, and we think none are of material merit, and the refusal to grant a new trial was right.

*Judgment, on the main bill of exceptions, affirmed. Cross-bill of exceptions dismissed.*